STATE ex rel. THELEN, RELATOR, v. DISTRICT COURT
ET AL., RESPONDENTS.

(No. 3,748.)

(Submitted September 25, 1915.   Decided October 25, 1915.)

[152 Pac. 475.]

*District   Courts—Contempt—Attorneys—Practice—New   Trial*
*Proceedings—Bills of Exception—Service of Original Draft—*
*Duty  to  Return—Statutory  Construction—Legislative  Policy.*

Bills of Exception—Service of Original Draft—Duty to Return—Contempt.
1.  Inasmuch as section 6788, Revised Codes, provides four different methods for bringing a proposed bill of exceptions to settlement, three of which do not require a notice of five days to the adverse party, an attorney adjudged guilty of contempt of court in refusing to obey an order requiring him to return the draft of a proposed bill at a time certain, was not in position to defend his disobedience on the assumption that his adversary would proceed upon the plan which did require such notice and that a return of the bill at the time specified would have been useless because the time within which settlement could be had had expired; in the absence of an averment in his affidavit for a writ of supervisory control to review the action of the trial court that opposing counsel did not intend to pursue either of the other three methods which do not require notice, it will be presumed that the proposed bill, if returned, would have answered its purpose.

Same—Refusal to Return Draft—Contempt.
2.  Where a party litigant serves upon his adversary the original draft of his proposed bill of exceptions, instead of a copy thereof, as he may do under section 6788, Revised Codes, such draft does not become the property of the latter, but is, though not technically so until settled as the bill of exceptions and filed with the clerk, a record in the case, and if by withholding it the settlement of the bill is prevented, such act constitutes an unlawful interference with the new trial proceedings and a contempt of court within the meaning of subdivision 9 of section 7309, Revised Codes.

Statutory Construction—Legislative Policy—Duty of Courts.
3.  In the construction of statutes, courts are not concerned with questions of legislative policy; their duty is to construe the laws as they find them.

Original application by the State on the relation of John N. Thelen, for writ of supervisory control to annul a judgment of contempt against relator by the District Court of the Twelfth Judicial District in and for the County of Chouteau, and John W. Tattan, Judge thereof.   Proceeding dismissed.

51 Mont.—22

*Messrs. Freeman & Thelen,* for Relator, submitted a brief; *Mr. John N. Thelen* argued the cause orally.

*Messrs. Stranahan & Stranahan,* for Respondents; oral argument by *Mr. F. E. Stranahan.*

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In an action pending in the district court of Chouteau county, entitled *"Williams* v. *Rogers,"* in which the trial had resulted in a verdict for the plaintiff, a notice of intention to move for a new trial was filed on behalf of the defendant, and the draft of a proposed bill of exceptions was prepared and served upon Freeman & Thelen, attorneys for plaintiff. On May 14, 1915, counsel for plaintiff served and filed their proposed amendments. On May 20 counsel for defendant demanded of counsel for plaintiff the return of the draft of the proposed bill, and, this demand having been refused, applied to the court for an order requiring its return. The order was granted and served, but, counsel refusing to comply, proceedings in contempt were instituted, and upon a hearing, Attorney Thelen was adjudged in contempt, and his punishment therefor assessed. The supervisory power of this court is invoked to annul the judgment in the contempt proceedings. An order to show cause was issued and the matter submitted upon motion to quash.

The first contention of relator is that when the demand was [1] made for the return of the draft, the time for presenting the proposed bill and amendments had expired, and therefore no useful purpose could have been served by compliance with the demand. Section 6788, Revised Codes, requires that within ten days after the amendments are served, the proposed bill and amendments must be presented by the party seeking settlement, to the judge who tried or heard the case, upon five days' notice to the adverse party, or be delivered to the clerk or judge. If it had been the purpose of counsel for defendant Rogers to present the proposed bill and amendments for settlement within ten

days after the amendments were proposed and upon five days'
notice to plaintiff, the time within which they could have com-
plied with the statute above had expired, and no useful purpose
could have been subserved by a return of the draft of the pro-
posed bill which had been served upon counsel for plaintiff.   But
this relator is altogether in error in assuming that the statute
above provides but a single method of procedure.   In *Girard* v.
*McClernan,* 39 Mont. 523, 105 Pac. 224, we had occasion to con-
sider this question at length, and from a review of the history
of the statute, in the light of its provisions, we concluded that a
party seeking settlement of a bill of exceptions can fully comply
with the law if within ten days after the amendments are served
he either: (1) presents the proposed bill and amendments upon
five days' notice to the adverse party; or (2) delivers them to
the clerk; or (3) delivers them to the judge.   That decision has
been approved in *Freeman* v. *Weare,* 42 Mont. 472, 113 Pac. 466,
and in *Best Mfg. Co.* v. *Hutton,* 49 Mont. 78, 141 Pac. 653.   The
five days' notice to the adverse party is required only in the
event the moving party elects to proceed under the first of these
three plans.   If he proceeds under the second or third plan, he
has the entire period of ten days from the date upon which the
amendments were served within which to deliver the proposed
bill and amendments.   The same section also provides a fourth
plan.   If there are not any amendments offered, or if amend-
ments are offered and accepted, the moving party may present
the proposed bill and amendments, if any, to the judge for settle-
ment without notice to the adverse party.   The affidavit for this
writ fails to disclose—as it could not well disclose—that counsel
for defendant Rogers did not intend to pursue either the second,
third or fourth plan indicated above, and therefore we must
indulge the presumption that the draft of the proposed bill, if
returned, would have served the purpose to have the bill of ex-
ceptions settled in due time.

It is next contended that the draft of the proposed bill had
not been filed, and was not therefore one of the records in the
case, and for this reason the trial court had no authority over it

and could not order its return. This contention will be noticed further; but for the present it suffices to say that, under subdivision 9 of section 7309, if by withholding the draft of the proposed bill counsel unlawfully interfered with the proceedings of the court in *Williams* v. *Rogers,* the act constituted a contempt of court within the meaning of that section.

The principal controversy is waged about the construction to be given the first portion of section 6788 above. What is the [2] legal status of *the draft* of a proposed bill of exceptions which the moving party serves upon his adversary? So far as involved here, the portion of the section in controversy reads: "When a party desires to have exceptions taken at a trial settled in a bill of exceptions, he may, within ten days after the entry of judgment, * * * or such further time as the court in which the action was pending, or a judge thereof, may allow, prepare the draft of a bill and serve the same, or a copy thereof, upon the adverse party." It is to be observed that here again the statute provides alternative plans of procedure. The moving party is clearly within the law if he serves upon his adversary either the original draft of his proposed bill, or a copy thereof. The language of the statute is too plain to admit of any other construction. The relator insists that the draft or the copy, as the case may be, which is served upon the adversary, becomes the property of such adversary, and he cannot be required to surrender it. Assuming that this position is correct in the event a copy is served, is it correct when the original draft is served, as it may be under the explicit terms of the statute above? It was unnecessary for counsel for defendant Rogers to prepare any copy of the draft made. They were authorized to serve, and did serve, the original draft. If that draft when served, became the private property of plaintiff Williams or her counsel, the new trial proceeding instituted in that action terminated at its inception. If the original draft passes beyond the control of the moving party and the court as soon as it is served, there is then no means by which the bill can ever be settled; for the moving party is not authorized to present a copy for settlement but is com-

manded by the statute to present to the judge, or leave with the clerk or judge, the proposed bill, which is the original draft. Under section 6796 new trial proceedings are instituted by serving and filing a notice of intention. Where a bill of exceptions is to be relied upon and none has been settled, such bill is to be prepared and settled under the provisions of section 6788 above. If the moving party elects to serve the original draft, as he may do, then in such case the new trial proceedings comprehend the service and filing of the notice of intention; the service of the original draft of the proposed bill; the service of amendments, if any; the presentation or delivery of the proposed bill and amendments; the settlement of the bill; and the submission and decision of the motion. The presentation of the original draft to the judge for settlement, or its delivery to the clerk or judge for the purpose of settlement, is as much a new trial proceeding as is the service and filing of the notice of intention, the settlement of the bill, or the determination of the motion. Although such original draft is not technically a record in the case, until settled as the bill of exceptions and filed with the clerk, it is potentially such a record from the time of its service, and if, by withholding it, the settlement of the bill is prevented, the act of withholding constitutes an unlawful interference with the new trial proceedings. The refusal of Attorney Thelen to return the original draft in order that it might be possible to have the bill of exceptions settled rendered him amenable to the court before which the new trial proceedings were pending.

It is idle to refer to the approved definitions of the term "serve." Section 6788 expressly authorizes the service, in this particular instance, of the original draft, and must contemplate its return; otherwise the bill could never be settled and the statute would be meaningless. The provisions of the section first appear in the laws of this state in the Code of Civil Procedure of 1895. We are not informed by our Code commissioners from what source these provisions were taken; but their similarity to the terms employed in section 650 of the Code of Civil Procedure of California would lead to the conclusion that they were bor-

rowed from California, from which source many of our Code provisions come. Section 650 of the California Code of Civil Procedure was first adopted in substantially its present form in 1874, before typewriting machines or other means of manifold writing were in common use, and the provision for service of the original draft was doubtless intended to obviate the labor and expense of preparing a copy by the tedious method of writing it out with pen and ink. Our legislature might with propriety have required the service of a copy in every instance, but it did not do so. Doubtless the item of extra expense for procuring a copy of the original draft was an influential factor in the action taken. The very liberal provisions of section 6788 would indicate a legislative purpose to provide for the settlement of bills of exceptions by the simplest and least expensive method. But whatever may have been the underlying principle which prompted its enactment in the present form, it suffices for us to [3] know that it is so written. With questions of legislative policy, courts are not concerned. The duty imposed upon them is to construe the laws as they find them.

In the absence of any showing that the district court acted arbitrarily or capriciously in holding this relator guilty of contempt, we are not at liberty to interfere. The motion to quash is sustained and the proceeding is dismissed.

*Dismissed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.